GORDON LAW OFFICES
Philip H. Gordon, ISBN 1996
pgordon@gordonlawoffices.com
Bruce S. Bistline, ISBN 1988
bbistline@gordonlawoffices.com
623 W. Hays Street
Boise, ID 83702
Telephone: (208) 345-7100
Facsimile: (208) 345-0050

*[Proposed] Liaison Counsel for Plaintiff*

ROBBINS UMEDA LLP
Marc M. Umeda
mumeda@robbinsumeda.com
Craig W. Smith
csmith@robbinsumeda.com
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

*[Proposed] Lead Counsel for Plaintiff*

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LESLIE NIEDERKLEIN, Individually and on Behalf of All Others Similarly Situated, ) ) ) | Civil Action No. 1:10-cv-00479-CWD |
| Plaintiff, ) ) ) | CLASS ACTION |
| vs. ) ) ) | |
| PCS EDVENTURES!.COM, INC., ANTHONY A. MAHER, and SHANNON M. STITH, ) ) ) ) ) | **MEMORANDUM OF LAW IN SUPPORT OF MOUSTAFA SALEM'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL** |
| Defendants. ) ) | |

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................................ii

I.    SUMMARY OF ARGUMENT ...............................................................................1

II.   STATEMENT OF FACTS .......................................................................................1

III.  ARGUMENT ...........................................................................................................4

      A.   Mr. Salem Satisfies the PSLRA's Requirements and Should Be Appointed
           Lead Plaintiff ...............................................................................................4

           1.   Mr. Salem Has Timely Moved for Appointment as Lead
                Plaintiff ..............................................................................................5

           2.   Mr. Salem Has the Requisite Financial Interest in the Relief
                Sought by the Class ............................................................................5

           3.   Mr. Salem Satisfies the Requirements of Rule 23 ..............................5

                a.    Typicality..................................................................................6

                b.    Adequacy..................................................................................6

      B.   Mr. Salem's Selection of Lead and Liaison Counsel Should Be Approved............7

IV.   CONCLUSION ........................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)...................................................................................7

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992)....................................................................................6

*Hodges v. Akeena Solar, Inc*.,
    263 F.R.D. 528 (N.D. Cal. 2009) .............................................................................6

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002).................................................................................5, 6

**STATUTES**

15 U.S.C.
    §78u-4 (a)(3)(A)-(B)..............................................................................................4, 5
    §78u-4 (a)(3)(A)(i) ...................................................................................................4
    §78u-4 (a)(3)(B) ...................................................................................................1, 4
    §78u-4 (a)(3)(B)(iii) ............................................................................................1, 5
    §78u-4 (a)(I)-(3)(B)(i) .............................................................................................4
    §78u-4(a)(3)(B) .........................................................................................................5
    §78u-4 (a)(3)(B)(v)..............................................................................................1, 7

Federal Rules of Civil Procedure Rule 23 ............................................................................1, 5

Class member Moustafa Salem ("Mr. Salem") respectfully submits this memorandum of law in support of his motion for: (1) appointment as lead plaintiff in the above-referenced action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4; and (2) approval of his selection of Robbins Umeda LLP ("Robbins Umeda") as lead counsel and Gordon Law Offices ("Gordon Law") as liaison counsel for the class.

## I.      SUMMARY OF ARGUMENT

Presently pending in this district is a securities class action lawsuit brought on behalf of purchasers of PCS Edventures!.com, Inc. ("PCS" or the "Company") securities during the period between March 28, 2007 and August 15, 2007 ("Class Period"). This action is brought pursuant to Sections l0(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.l0b-5.

The PSLRA sets forth the manner by which courts are to select a lead plaintiff. Pursuant to the PSLRA, the Court is to appoint as lead plaintiff the movant with the largest financial interest in the litigation that otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") . *See* 15 U.S.C. §78u-4 (a)(3)(B)(iii).

Here, Mr. Salem should be appointed as lead plaintiff because: (1) he timely filed for appointment as lead plaintiff; (2) to the best of his knowledge, Mr. Salem has the largest financial interest in this litigation; and (3) he will adequately represent the interests of the class. *See id.*; *see also* Section IV, *infra*. Additionally, Mr. Salem has retained experienced and competent counsel to represent the class. As the "most adequate plaintiff," Mr. Salem's selection of Robbins Umeda to serve as lead counsel, and Gordon Law as liaison counsel for the class should be approved. *See* 15 U.S.C. §78u-4 (a)(3)(B)(v).

## II.     STATEMENT OF FACTS

PCS is an Idaho corporation headquartered in Boise, Idaho. The Company engages in the business of developing and marketing educational learning labs, curricula, and related technology-based educational products and programs.

On March 28, 2007, PCS publicly announced a purported license agreement for educational curriculum and content with its sales and distribution partner in the Middle East ("PCS Middle East").  In its announcement, PCS disclosed that PCS Middle East had agreed to pay a fixed license fee of $7.15 million in consideration for a license to translate, localize, and deliver certain PCS titles from the PCS BrickLab® curriculum series in Saudi Arabia.  As a proximate result of this announcement, PCS stock rose from $.65 per share to $.93 per share, a 43% increase.

On May 17, 2007, the Company filed an amended Form 8-K with the SEC in which it reiterated the material terms of the allegedly finalized agreement.  In its Form 8-K, the Company stated that it had not received payment pursuant to the purported license agreement by May 15, 2007, as it previously announced it would.  PCS attributed the delay to "the uniqueness of the project", and maintained appropriate Saudi Arabian authorities had "held special meetings to discuss, finalize, and assign [the] project."

On June 28, 2007, the Company announced that it had elected to postpone recognition of the $7.15 million in revenue under the purported license agreement because of delays in Saudi Arabia, which thereby caused delays in payment to PCS.  In the same press release, defendant Anthony A. Maher ("Maher"), the Chairman of the Board of Directors (the "Board") of PCS and its Chief Executive Officer, stated that its decision not to recognize the license revenue "[did] not suggest that any projects in Saudi Arabia that were the subject of the original invoice [were] not going forward, but it [meant] that such projects [would] likely commence later than [initially expected]."

On June 29, 2007, PCS filed a 10-KSB with the SEC for the fiscal year ended March 31, 2007, in which the Company restated its claim that it had reached a license agreement with PCS Middle East, but had not received any payment due to certain delays in Saudi Arabia.

In truth, at no time during the Class Period did PCS Middle East have a contract with Saudi Arabia to provide services for their governmental educational initiative which would entail

implementation of licensed PCS products.  In fact, according to the SEC,[1] Defendants PCS, Maher, and Stith (collectively, "Defendants") were fully aware of the non-existence of such a contract and PCS Middle East's inability to fulfill the terms of the purported license agreement without funding from the Saudi government.  Notwithstanding, Defendants failed to disclose any of the foregoing material information within their knowledge, instead, perpetuating the false belief that PCS had executed a valid licensing contract with PCS Middle East and that Saudi governmental funding was a foregone conclusion.

Finally, on August 15, 2007, PCS issued a press release concerning the purported license agreement with PCS Middle East.  PCS admitted in the press release that PCS Middle East never had a contract with the Saudi government to fund the license agreement and a contract was likely not forthcoming in the near future.  Further, the Company claimed its premature announcements regarding the purported license agreement were based on assurances made by PCS Middle East that it would be awarded a contract by the Saudi government.  Nevertheless, according to the SEC complaint filed August 26, 2010, and the amended complaint filed on September 8, 2010, Defendants knew during the Class Period that the Company did not have a valid binding contract with PCS Middle East and that PCS Middle East did not have a contract with the Saudi government.  Consequently, as a result of the August 15, 2007 press release, PCS stock fell from $0.90/share to $0.56/share, a 37.7% decrease.

---

[1] On September 8, 2010, the SEC filed an amended complaint against PCS, and defendants Maher and Shannon M. Stith ("Stith") alleging, inter alia, Section 10(b) and Rule 10b-5 violations for issuing materially false and misleading press releases, and filing materially false and misleading reports with the commission.  In the amended complaint, the SEC states that its investigation revealed defendants knew there was no contract with Saudi Arabia, and no valid contract with PCS Middle East when releasing their public statements and reports, but failed to disclose this information.  Rather, defendants were motivated to record the unrealized revenue from the licensing agreement before March 31, 2007, in order to meet its EBITDA goals, which would then prevent certain penalty terms in an outstanding $1 million convertible note from vesting.

### III.   ARGUMENT

####  A.   Mr. Salem Satisfies the PSLRA's Requirements and Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure that governs the appointment of a lead plaintiff in a private action arising under the Exchange Act that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4 (a)(I)-(3)(B)(i).

First, a plaintiff who files the initial action must publish a notice to the class within twenty days of filing the action informing class members of the following: (i) the pendency of the action; (ii) the claims asserted therein; (iii) the purported class period; and (iv) the right to move the court to be appointed as lead plaintiff within sixty days of the publication of the notice. 15 U.S.C. §78u-4 (a)(3)(A)(i). Here, the relevant notice was published on *Business Wire* on September 17, 2010. *See* Declaration of Philip H. Gordon in Support of Moustafa Salem's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Gordon Decl."), Ex. A. Within sixty days after publication of the notice, any "person" or "group of persons" who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §78u-4 (a)(3)(A)-(B).

Second, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4 (a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is:

the person or group of persons that-

(aa) has either filed the complaint or made a motion in response to a notice ... ;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4 (a)(3)(B)(iii).

### 1.    Mr. Salem Has Timely Moved for Appointment as Lead Plaintiff

All class members who are interested in moving for the appointment of lead plaintiff in this matter must do so by November 16, 2010. *See* 15 U.S.C. §78u-4 (a)(3)(A)-(B). Pursuant to the provisions of the PSLRA and within the requisite time frame following the publication of the requisite notice, Mr. Salem hereby moves this Court for appointment as lead plaintiff on behalf of all members of the class. Mr. Salem has also duly signed and filed a certification stating his willingness to serve as a representative party on behalf of the class. *See* Gordon Decl., Ex. B.

### 2.    Mr. Salem Has the Requisite Financial Interest in the Relief Sought by the Class

Pursuant to 15 U.S.C. §78u-4 (a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant or movants who have the largest financial interest in the class action. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).

During the Class Period, Mr. Salem suffered losses of $80,689.17 based on his Class Period purchases of PCS stock. To the best of Mr. Salem's knowledge, his financial interest in this matter is the largest of any competing lead plaintiff movant. Accordingly, Mr. Salem should be appointed lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B).

### 3.    Mr. Salem Satisfies the Requirements of Rule 23

According to 15 U.S.C. §78u-4 (a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately

protect the interests of the class.    Of these four prerequisites, only two — typicality and adequacy — directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a lead plaintiff motion, the court focuses primarily on the typicality and adequacy of representation requirements, and only a preliminary showing is necessary. *See Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 532 (N.D. Cal. 2009); *see also Cavanaugh*, 306 F.3d at 730.

a.      **Typicality**

In determining whether a movant presents claims or defenses typical of those of the class, the court looks to see "whether 'other members have the same or similar injury, whether the action is based on conduct which is not unique to the [movant], and whether other class members have been injured by the same course of conduct.'" *Hodges*, 263 F.R.D. at 532 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).   When conducting a typicality analysis, the court directs its attention to the nature of the claim or defense of the movant, rather than the specific facts from which the cause of action arose. *See Hanon*, 976 F.2d at 508.

Mr. Salem satisfies the typicality requirement of Rule 23.  Like the other class members, Mr. Salem: (1) purchased PCS securities during the Class Period at artificially inflated prices; and (2) suffered damages thereby.  Moreover, Mr. Salem's claims are premised on the same legal theories and arise from the same misconduct and course of events as alleged by the class. Finally, the injury incurred by Mr. Salem resembles that incurred by similarly situated class members who traded the Company's securities relying on Defendants' material misrepresentations and omissions.

b.      **Adequacy**

A lead plaintiff must also fairly and adequately protect the interests of the class. *See Hodges*, 263 F.R.D. at 532; *Cavanaugh*, 306 F.3d at 730.  When considering adequacy, courts

consider the following two questions: "'(1) do the [movants] and their counsel have any conflicts of interest with other class members and (2) will the [movants] and their counsel prosecute the action vigorously on behalf of the class?'" *Hodges*, 263 F.R.D. at 532 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Here, Mr. Salem is an adequate lead plaintiff because his interest in aggressively pursuing the claims against Defendants is aligned with the interests of the members of the class who were similarly harmed as a result of Defendants' false and misleading statements.  There is no antagonism between Mr. Salem's interests and those of the other members of the class and there is nothing to indicate that Mr. Salem will do anything but vigorously pursue the claims on behalf of the class.  Lastly, as demonstrated below, Mr. Salem's proposed counsel is qualified, experienced, and able to conduct this complex litigation in an efficient, effective, and professional manner.

Accordingly, Mr. Salem satisfies Rule 23's typicality and adequacy requirements for the purposes of this Motion.

### B.   Mr. Salem's Selection of Lead and Liaison Counsel Should Be Approved

Pursuant to 15 U.S.C. §78u-4 (a)(3)(B)(v), the lead plaintiff shall, subject to court approval, select and retain counsel to represent the class it seeks to represent.  In that regard, Mr. Salem, as the presumptively most adequate plaintiff, has selected Robbins Umeda to serve as lead counsel for the class. Robbins Umeda possesses substantial shareholder litigation experience, including the successful prosecution of securities fraud class actions on behalf of injured investors. *See* Gordon Decl., Ex. C.  Gordon Law has served as liaison counsel in previous securities and complex class actions, and is capable of doing so here.  *See* Gordon Decl., Ex. D.  As such, the Court should approve Mr. Salem's selection of Robbins Umeda as lead counsel and Gordon Law as liaison counsel for the class.

## IV.    CONCLUSION

For the foregoing reasons, the Court should appoint Moustafa Salem as lead plaintiff and approve his selection of Robbins Umeda as lead counsel and Gordon Law as liaison counsel for the class.

Dated: November 16, 2010

GORDON LAW OFFICES
PHILIP H. GORDON
BRUCE S. BISTLINE


s/Philip H. Gordon
Philip H. Gordon, ISBN 1996
pgordon@gordonlawoffices.com
Bruce S. Bistline, ISBN 1988
bbistline@gordonlawoffices.com
623 W. Hays Street
Boise, ID 83702
Telephone: (208) 345-7100
Facsimile: (208) 345-0050

*[Proposed] Liaison Counsel for Plaintiff*

ROBBINS UMEDA LLP
Marc M. Umeda
mumeda@robbinsumeda.com
Craig W. Smith
csmith@robbinsumeda.com
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

*[Proposed] Lead Counsel for Plaintiff*

LAW OFFICES OF CURTIS V. TRINKO, LLP
Curtis V. Trinko
ctrinko@trinko.com
16 West 46th Street
New York, NY 10036
Telephone: (212) 490-9550
Facsimile: (212) 986-0158

*Additional Counsel for [Proposed] Lead Plaintiff*

544731