UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LESLIE NIEDERKLEIN, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>PCS EDVENTURES!.COM, INC,. ANTHONY A. MASHER, and SHANNON M. STITH,<br><br>     Defendants. | Case No. 1:10-cv-00479-EJL-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

This matter is before the Court on competing motions for the appointment of lead

plaintiff and approval of counsel in this class action filed against Defendant PCS

Edventures!.com, Inc., Anthony A. Mather[1] and Shannon M. Stith.  The Court has

received two motions:  one from Kenneth Padgett and Bill Hickman who collectively

seek appointment as the "Padgett Group" (Dkt. 13); and the second from Moustafa Salem

---

[1] From the Return of Service (Dkt. 5) and Notice of Appearance (Dkt. 19), it appears Defendant Anthony A. Mather's name is misspelled in the caption.

**MEMORANDUM DECISION AND ORDER - 1**

(Dkt. 15).  The Padgett Group is represented by The Rosen Law Firm, P.A., and Mr.

Salem is represented by Robbins Umeda LLP.  Mr. Salem also filed a Motion to Strike

(Dkt. 33) portions of the Padgett Group's reply brief under Rule 12(f) of the Federal

Rules of Civil Procedure.

   The Court conducted a hearing on the motions on January 14, 2011.  After

considering the parties' oral arguments, memoranda, and materials submitted in support

of their motions, for the reasons discussed more fully below, the Court will appoint Mr.

Salem as lead plaintiff; and approve Mr. Salem's selection of Robbins Umeda as counsel

for lead plaintiff and Gordon Law Offices as liaison counsel.  The Court also will deny

the motion to strike.

## BACKGROUND

   PCS Edventures!.com, Inc. ("PCS"), is engaged in the business of developing and

marketing educational learning labs, curricula, and related software and technology.[2]  *See*

Compl. (Dkt. 1.) PCS is an Idaho corporation headquartered in Boise, Idaho.

   Plaintiffs allege that on March 28, 2007, PCS issued a press release which

announced a purported sale to its Middle East distributor, Global Techniques a/k/a PCS

Middle East ("PCS Middle East").  The press release stated that PCS had entered into a

license agreement with PCS Middle East for a fixed license fee of $7.15 million.

However, PCS Middle East allegedly did not have the ability to pay the $7.15 million

---

[2] The factual background is taken from the Complaint.  The Court is not making findings of fact
in this decision.

MEMORANDUM DECISION AND ORDER - 2

without first obtaining a contract and receiving funds from the Kingdom of Saudi Arabia ("Saudi Arabia").  PCS Middle East did not, however, have a contract with Saudi Arabia. PCS officers allegedly knew there was no contract with Saudi Arabia and thus, also knew of PCS Middle East's alleged inability to pay the $7.15 million licensing fee.

On March 29, 2007, PCS filed a Form 8-K with the United States Securities and Exchange Commission, announcing the purported $7.15 million license agreement.  The Form stated that full payment would be received by PCS no later than May 15, 2007.

Between May and August 2007, PCS issued additional press releases and filed a Form 8-K/A and a Form 10-KSB, all of which contained allegedly materially false and misleading representations or omissions related to the purported license agreement.  The false and misleading information caused the price and trading volume of PCS stock to be artificially inflated.

On August 26, 2010, the Securities Exchange Commission ("SEC") instituted a civil action against PCS for the allegedly false and misleading representations concerning the purported license agreement with Saudi Arabia.  Plaintiffs here claim that no reasonable investor or class member reasonably could have suspected that Defendants' misstatements about the purported $7.15 million sales contract was made with scienter. Further, Plaintiffs allege that the market for PCS securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, Plaintiffs claim that PCS securities traded at artificially inflated prices during the Class Period.  Plaintiffs purchased or otherwise

**MEMORANDUM DECISION AND ORDER - 3**

acquired PCS securities relying upon the integrity of the market price of PCS securities and market information relating to PCS, and claim to have been damaged thereby. *See* Compl. (Dkt. 1.)

On September 17, 2010, The Rosen Law Firm published early notice of pendency of this action in the *Business Wire*, a national business-oriented wire service. Gordon Decl. Ex. A, Gordon Decl. Ex. 1 (Dkts. 17-1, 18-1.)[3] The same day, the Complaint was filed with the Court. (Dkt. 1.) The Complaint is brought on behalf of Leslie Niederklein and all other purchasers of PCS securities similarly situated, and names PCS and certain of its officers and directors as defendants. The Complaint alleges that Defendants' conduct violated Sections 10(b) and Rule 10b-5 thereunder, and 20(a) of the Securities Exchange Act of 1934. 15 U.S.C. § 78a, *et. seq.* The Complaint also alleges that, between March 28, 2007 and August 15, 2007 (the "Class Period"), purchasers of PCS securities relied upon materially false and misleading statements of Defendants, and were damaged thereby.

On November 16, 2010, the Padgett Group and Mr. Salem filed the instant motions seeking appointment as lead plaintiff. The Padgett Group filed its motion on November 16, 2010, selecting The Rosen Law Firm to serve as lead counsel and Gordon Law Offices to serve as liaison counsel. (Dkt. 13.) Mr. Salem also filed his motion on November 16, 2010, seeking appointment as lead plaintiff, and requesting the approval of

---

[3] Both movants proposed Gordon Law Offices as liaison counsel, and Gordon Law Offices submitted declarations and other documents on behalf of both movants.

MEMORANDUM DECISION AND ORDER - 4

his selection of Robbins Umeda LLP as lead counsel and Gordon Law Offices as liaison counsel.  The Padgett Group collectively claims $301,490.85 in losses ($199,732.15 for Mr. Padgett individually, and $101,758.70 for Mr. Hickman individually).  Mr. Salem claims $80,689.17 in losses.

On January 5, 2011, Mr. Salem filed a Motion to Strike (Dkt. 33) certain portions of the Padgett Group's Reply (Dkt. 30), and Exhibit A to Philip Gordon's Declaration (Dkt. 31).

On January 14, 2011, the Court heard arguments on the proposed lead plaintiffs' motions.  During the hearing, the Padgett Group conceded that its individual members (Kenneth Padgett and Bill Hickman) have no pre-existing relationship.  Further, both the Padgett Group and Mr. Salem consented to the approval of Gordon Law Offices as liaison counsel should either movant be appointed lead plaintiff.  None of the proposed lead plaintiffs were present at the hearing, however.  Counsel for the Defendants were present at the hearing, but took no position with respect to the proposed lead plaintiffs' motions.

## DISCUSSION

### 1. Appointing Lead Plaintiff Under PSLRA

The Private Securities Litigation Reform Act ("PSLRA") sets forth a procedure for the selection of a lead plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a).  First, the plaintiff who files the initial action must publish notice to the class informing class members of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(I).  Within 60

**MEMORANDUM DECISION AND ORDER - 5**

days after publication of the notice, any member of the proposed class may move the

court to serve as lead plaintiff of the purported class.  15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

Next, within 90 days after publication of notice, "the court shall consider any

motion made by a purported class member in response to the notice, including any motion

by a class member who is not individually named as a plaintiff in the complaint or

complaints" and shall appoint as lead plaintiff the member or members that the court

determines to be "most capable of adequately representing the interests of class members.

. . . "  15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA also provides a rebuttable presumption

that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to
> a notice . . .
> (bb) in the determination of the court, has the largest financial
> interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal
> Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption can be rebutted only upon proof by

a member of the purported plaintiff class that the most adequate plaintiff "will not fairly

and adequately protect the interests of the class" or "is subject to unique defenses that

render such plaintiff incapable of adequately representing the class."  15 U.S.C. §

78u-4(a)(3)(B)(iii)(II).

The United States Court of Appeals for the Ninth Circuit has recognized that a

district court must follow a three-step process to determine the lead plaintiff in securities

actions.  *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).  First, the court must

**MEMORANDUM DECISION AND ORDER - 6**

determine whether the procedural requirements are satisfied. *Id.* The procedural requirements demand that a motion for appointment as lead plaintiff be filed within 60 days of the published notice of the class action. 15 U.S.C. § 78u-4(a)(3)(A). Each proposed lead plaintiff also must provide a sworn certification that he or she has reviewed and authorized the complaint, did not purchase the security at the direction of counsel or in order to participate in any private action and is willing to serve as a representative party. *Id*. § 78u-4(a)(2)(A).

Second, the court must identify which proposed lead plaintiff has the largest financial interest by comparing the financial stakes of the parties. *In re Cavanaugh*, 306 F.3d. at 729-30. Once the individual or group of individuals with the largest financial interest is identified, the court must "focus its attention on *that* plaintiff" and determine whether that plaintiff has made a prima facie showing that Rule 23 requirements are met. *Id*. at 730 (emphasis in original). If the individual or group of individuals with the largest financial interest meets the requirements of Rule 23, they become the presumptively most adequate plaintiff. *Id*. On the other hand, "[i]f the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Id*.

Third, other plaintiffs may rebut the presumptive lead plaintiff's prima facie showing that he satisfies the requirements of Rule 23, particularly the typicality and adequacy requirements. *Id.*

**MEMORANDUM DECISION AND ORDER - 7**

Finally, once the court determines who is the most adequate plaintiff, that plaintiff is required to select counsel to represent the class, subject to the court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). "While the appointment of counsel is made subject to the approval of the court, the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff." *In re Cavanaugh*, 306 F.3d. at 734.

### A. *Procedural Requirements*

Both the Padgett Group and Mr. Salem have complied with the procedural requirements, as both motions for appointment as lead plaintiff were filed on November 16, 2010, within 60 days of the published notice. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). And, certifications signed by Mr. Padgett, Mr. Hickman and Mr. Salem, filed along with their respective motions comply with § 78u-4(a)(2)(A).[4] *See* Gordon Decl., Ex. 2, Gordon Decl. Ex. B (Dkts. 18-2, 17-2.)

### B. *Largest Financial Interest*

The PSLRA's requirement that the presumptive lead plaintiff have the "largest financial interest in the relief sought by the class" means that the district court must

---

[4] The Court notes that the certificate by the members of the Padgett Group did not include the "*authorized its filing*" language, whereas Mr. Salem's certification did include that language. Some district courts interpret the PSLRA's certification requirement "that the plaintiff has reviewed the complaint and *authorized its filing*," to apply exclusively to proposed lead plaintiffs that initially authorized filing the complaint, while other courts interpret the provision to apply to all proposed lead plaintiffs. *See* 15 U.S.C. § 78u-4(a)(2)(A)(i) (emphasis added); *Aronson v. McKesson HBOC, Inc.*, 79 F.Supp.2d 1146, 1155-1156 (N.D. Cal. 1999); *but see Chill v. Green Tree Financial Corp.*, 181 F.R.D. 398, 410 (D.Minn.1998). Persuasive authority exists within the Ninth Circuit that implies the certification requirement applies to all proposed lead plaintiffs. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). Nonetheless, because neither movant actually "authorized" the initial filing of the complaint in this case, the Court concludes that neither certification is defective for either failing to include or including the "*authorized it filing*" language.

compare the financial stakes of the various proposed lead plaintiffs and determine which has the most to gain from the lawsuit.  *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).  The Padgett Group claims aggregate losses of $301,490.85 for the two investors composing the group.  Gordon Decl. Ex. 3 (Dkt. 18-3.)  Likewise, Mr. Salem claims losses of $80,689.17, almost four times less than the losses suffered collectively by the two members of the Padgett Group.  Although Mr. Salem contends the Padgett Group miscalculated its claimed losses,[5] he concedes that the Padgett Group suffered greater losses than him.  *See* Salem Opp. (Dkt. 24.)  And, it is undisputed that Mr. Salem has next largest financial loss after Hickman.  *See* Padgett Reply, at 2 (Dkt. 30.)

But here, the initial question for identifying who will serve as lead plaintiff is whether appointment of a group of two unrelated investors to serve as lead plaintiff is consistent with the purposes of the PSLRA, when the proposed group concedes that its members have no pre-existing relationship and the record is devoid of evidence demonstrating the group is cohesive and not purely lawyer-driven.  As explained below, the Court finds appointment of the Padgett Group would be inconsistent with the purposes of the PSLRA.

---

[5] Mr. Salem contends that the Padgett Group miscalculated its members' losses by "simply basing the losses of their members on the stock price at which they sold their stock, regardless of when the sale actually occurred."  According to Mr. Salem, "[i]f stock is not sold within ninety days of the truth's public disclosure, losses are determined based on the company's average stock price for those ninety days," (citing to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)).  Mr. Salem further alleges that, had the Padgett Group calculated its members' losses via the later formula, Mr. Padgett's "actual losses" should have been $198,720, and Mr. Hickman's losses should have been $82,818.70.  Salem Opp. at 11 (Dkt. 24.)

**MEMORANDUM DECISION AND ORDER - 9**

### (1) *Purpose of PSLRA*

As an initial matter, the Court must determine whether it will allow the proposed group of two plaintiffs to be appointed lead plaintiff.  The PSLRA expressly states that the most adequate plaintiff may be a "person or group of persons."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  What it does not state is whether individuals, particularly individuals without a pre-existing relationship, may aggregate their losses as a group for the purpose of becoming lead plaintiff.  *See In re Cavanaugh*, 306 F.3d 726, 731 n. 8 (9th Cir. 2002) (observing that the statute recognizes that a "group of persons" can serve as a lead plaintiff, but not deciding the issue of whether a group could aggregate losses to satisfy the "largest financial interest" requirement).  Here, Mr. Salem claims the Padgett Group is an "artificial group" created only for purposes of lawyer-driven litigation.

One of the main purposes of the PSLRA is to prevent lawyer-driven litigation, which is undermined by allowing "'lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes' because such practice 'would allow and encourage lawyers to direct the litigation.'"  *In re Level 3 Commc'ns*, No. 09-CV-00200-PAB-CBS, 2009 U.S. Dist. LEXIS 44706, at *2-3 (D. Colo. May 4, 2009) (quoting *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997)) (declining to appoint a group that failed to submit evidence that its members would act cohesively and control litigation).  Accordingly, courts have recognized that "allow[ing] an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff."  *Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997).  Likewise,

**MEMORANDUM DECISION AND ORDER - 10**

such a group would be unlikely to "fairly and adequately represent the class" pursuant to Rule 23 because "it is unlikely to engage in the litigation in a meaningful way at all." *Tsirekidze,* 2008 WL 942273, at *3.

Numerous courts throughout the country have cautioned that "groups comprised of individuals and entities having no pre-litigation relationship or identifiable cohesiveness aside from their alleged losses and shared counsel should not be appointed lead plaintiff under the [PSLRA]." *In re Level 3 Commc'ns*, 2009 U.S. Dist. LEXIS 44706, at *2. Although the Padgett Group asserts that "[d]istrict courts in the Ninth Circuit have uniformly ruled that it is proper for a group of unrelated investors, such as the Padgett Group, to serve as lead plaintiffs,"[6] it overlooked persuasive authority from this Court which holds otherwise.  Specifically, in *In re Atlas Mining Co. Sec. Litig*., this Court held that "when a group does not have a pre-existing relationship, appointing that group as lead plaintiff would not best serve the class[, and] would also defeat the PSLRA's purpose to prevent lawyer-driven litigation."  *In re Atlas*, No. 07-428-N-EJL-MHW, 2008 WL 821756, at *5 (D. Idaho Mar. 25, 2008).[7]

In *In re Atlas*, a group of seven individuals calling themselves the "Atlas Investors" filed a motion to be appointed lead plaintiff in a class action lawsuit.  *Id*. at *2. When resolving competing lead plaintiff motions, the Court found that the Atlas Investors

---

[6] Padgett Reply, at 2 (Dkt. 30.)

[7] Notably, The Rosen Law Firm represented the Atlas Investors group in *In re Atlas*, yet failed in its briefing to distinguish the Padgett Group from the group found improper in *In re Atlas*.

**MEMORANDUM DECISION AND ORDER - 11**

group was "purely lawyer-driven," without any connection between the members of the

group. *Id*. at *5.

> Two of the members were members of another group, with
> different counsel, four hours prior to the filing of the Atlas
> Investors' motion.  There is no connection between the
> individuals in this group.  When a group does not have a
> pre-existing relationship, appointing that group as lead
> plaintiff would not best serve the class.  It would also defeat
> the PSLRA's purpose to prevent lawyer-driven litigation.

*Id*. at *5.

Also in *In re Atlas*, this Court relied on the widely-accepted view that, for a group

to be appointed lead plaintiff, the group ordinarily must establish a pre-existing

relationship between the individual group members to show that it may best serve the

class.  (*See e.g.*, *Tsirekidze v. Syntax-Brillian Corp*.,Nos. CV-07-2204-PHX-FJM,

CV-07-2454-PHX-ROS, CV-07-2524-PHX-ROS, CV-07-2525-PHX-SRB, 2008 WL

942273, at *4 (D. Ariz. Apr. 7, 2008) (refusing to appoint a group as lead plaintiff that

lacked any evidence of cohesiveness); *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig*., 209

F.R.D. 447, 451-452 (C.D. Cal. 2002) (recognizing the uniform view that courts find it

inappropriate to appoint a group as lead plaintiff where its members do not have a

pre-existing relationship or provide any explanation for the formation of the group);

*Bowman v. Legato Systems, Inc*., 195 F.R.D. 655, 658 (N.D. Cal. 2000) (a group of

members without a pre-existing relationship contravenes the purposes of the PSRLA to

"eradicate 'lawyer-driven' litigation"); *Aronson v. McKesson HBOC, Inc., et al.*, 79 F.

Supp. 2d 1146, at 1154 ("the lead plaintiff must be an individual person or entity, or at most, a close-knit 'group of persons'").

Interestingly, the Padgett Group's reply brief cites to a Securities and Exchange Commission ("SEC") amicus curiae brief in *Parnes v. Digital Lightwave, Inc*., which is consistent with the holding in *In re Atlas*.  In its brief, the SEC cautions against appointing a group as lead plaintiff, but states that if the court does appoint a group, the group should be a "properly-constituted group" that, *inter alia*:

> provide[s] appropriate information about its members, structure, and intended functioning.  Such information should include descriptions of its members, including any pre-existing relationships among them; an explanation of how it was formed and how its members would function collectively; and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation.  <u>If the proposed group fails to explain and justify its composition and structure to the court's satisfaction, its motion should be denied or modified as the court sees fit</u>.

Brief for Charles D. Chalmers as Amici Curiae Supporting Appellant, *Parnes, et al., v. Digital Lightwave, Inc*., et al. No. 99-11293-FF (11th Cir. Aug. 25, 1999), *available at* www.sec.gov/litigation/briefs/diglight.htm (emphasis added).

Instead of explaining how the members of the Padgett Group are prepared to work together to manage this litigation on behalf of the proposed class, the Padgett Group has submitted merely boilerplate certifications discussing the stock purchases and alleged losses for the group's two members, Mr. Padgett and Mr. Hickman.  Likewise, during the hearing on the motions, the Padgett Group conceded that its members have no

**MEMORANDUM DECISION AND ORDER - 13**

pre-existing relationship, and attempted to distinguish this case from the facts of *In re Atlas* by asserting that this case does not involve a race to the courthouse or the regrouping that occurred in *In re Atlas*.  However, the Padgett Group misses the point by completely failing to address the premise of cohesion emphasized in the Court's analysis in *In re Atlas*.

Significantly, the Padgett Group failed to present any evidence of cohesion, in either its materials in support of its motion or during the hearing, to justify its members' relationship as a group, such as an affidavit from Mr. Padgett or Mr. Hickman explaining why they "grouped" together.  Neither was evidence presented justifying the appointment of co-lead plaintiffs or the grouping in any way.  And, there is nothing in the record contravening the appearance that The Rosen Law Firm was not the driving force behind the grouping.[8]  *See, e.g.*, *In re Level 3 Commc'ns*, 2009 U.S. Dist. LEXIS 44706, at *15-16 (refusing to appoint a group where joint declaration presented little evidence of "mechanisms for cooperation, dispute resolution, or communication among the group members and counsel"); *In re Eichenholtz*, No. C 07-06140 MHP, 2008 WL 3925289, at *9 (N.D. Cal. Aug. 22, 2008) (refusing to appoint a group that did not show how they would coordinate their efforts in the litigation).

---

[8] Buried in a footnote in its reply brief, rather than in initial support of its motion for appointment of lead counsel, the Padgett Group notes Mr. Hickman's past service in the military, and his role in the hotel industry.  Padgett Reply, at 7 (Dkt. 30.) The Padgett Group also notes Mr. Padgett's role in real estate development.  However, neither piece of information constitutes "evidence" or speaks to the relationship between Messrs. Hickman and Padgett to support their joinder as a cohesive unit to serve as lead plaintiff.

**MEMORANDUM DECISION AND ORDER - 14**

To remain consistent with the purposes of the PSLRA's lead plaintiff provisions, the Court concludes that a pre-existing relationship or evidence of cohesion between or among members of the group seeking appointment as lead plaintiff is essential. Here, the record before the Court fails to establish that the Padgett Group is a proper group for lead plaintiff appointment.

In yet another attempt to persuade the Court to appoint the Padgett Group as lead plaintiff, the Padgett Group filed a Notice of Recent Supplemental Authority ("Notice") five days after the hearing, which provides additional case law regarding alleged trends in appointing groups as lead plaintiff. (Dkt. 43.) Through its Notice, the Padgett Group argues that most courts currently recognize a trend in appointing groups as lead plaintiff absent a pre-existing relationship. Padgett Notice, at 2 (Dkt. 43.)

Notwithstanding any potential timeliness issues associated with the Padgett Group's Notice, the cases cited by the Padgett Group do not stand for the proffered proposition. Instead, the cases cited are consistent with the holding in *In re Atlas*, and stand for the proposition that a trend exists among the courts in favor of appointing small groups whose members are cohesive and that have provided supporting evidence as such. In stark contrast, the Padgett Group provided no supporting evidence.

In its Notice, the Padgett Group cites to a 2011 Northern District of Illinois case wherein the court observed that "the 'trend' has been to allow small groups of investors to act as lead plaintiff if they do not have pre-existing relationships." *Bang v. Acura Pharmaceuticals, Inc.*, No. 10 C 5757, 2011 WL 91099 (N.D. Ill. Jan. 11, 2011) (citing to

MEMORANDUM DECISION AND ORDER - 15

*Sabbagh v. Cell Therapeutics, Inc.*, Nos. C10-414MJP, C10-480MJP, C10-559MJP, 2010 WL 3064427, at *4-5 (W.D. Wash. Aug. 2, 2010)).  *Bang* relied on a Western District of Washington case, *Sabbagh v. Cell Therapeutics, Inc.*, wherein the court observed a trend, but only where the group is "small and cohesive enough[]that it can adequately control and oversee the litigation."  *Sabbagh*, 2010 WL 3064427, at *4-5 (quoting *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289, at *8 (N.D. Cal. Aug. 22, 2008)).  Likewise*, Sabbagh* relied on a Northern District of California case, wherein the court also observed the trend that "groups of unrelated investors (1) are 'not per se impermissible lead plaintiffs under the PSLRA,' but (2) will not be deemed adequate class representatives 'absent a showing that they are able to coordinate their efforts in the litigation.'"  *Sabbagh,* 2010 WL 3064427, at *5 (quoting *Schriver v. Impac Mortgage Holdings, Inc., et al*. (2006 U.S. Dist. LEXIS 40607, at *25 (C.D. Cal. 2006)).

In *Sabbagh*, the district court appointed a group of three investors as lead plaintiff where each member of the group:

> submitted sworn declarations detailing their investments [in the relevant securities] during the class period and demonstrating their willingness to represent the class. The declarations detail their backgrounds, investment experience, their willingness and agreement to act as a cohesive group, their intention to regularly consult with each other regarding the conduct of this lawsuit, their process for sharing information and decision-making, how decisions will be made between them and how their counsel will be overseen. They have agreed upon a spokesperson[]who will, should an unanticipated emergency arise, be authorised [sic] to act for the group.

*Sabbagh*, 2010 WL 3064427, at *6. Thus, the group of three appointed lead plaintiff in *Sabbagh* proffered substantial evidence supporting its contention that its individual members would act cohesively, in stark contrast to the void of evidence supporting the Padgett Group's contention that it should be appointed as lead plaintiff.

In summary, the cases cited by the Padgett Group as supplemental authority are consistent with the holding in *In re Atlas* and provide no persuasive arguments in favor of appointing the Padgett Group as lead plaintiff. The Padgett Group simply has not shown that it is an appropriate group for lead plaintiff appointment in this case.

### (2) *Disbanding*

For the first time, in its reply in support of its motion for appointment, the Padgett Group argued that, if the Court finds the Padgett Group is not a proper group, the Court should examine the individual losses of the two members of the Padgett Group rather than consider Mr. Salem the presumptive most adequate plaintiff. Padgett Reply, at 7 (Dkt. 30.) More specifically, the Padgett Group argued that, where a group is found improper, courts have evaluated the individual losses of the members of the groups to identify the presumptive most adequate plaintiff.

However, the Padgett Group's motion for appointment as lead plaintiff only proposed that Mr. Padgett and Mr. Hickman be considered for lead plaintiff collectively as the Padgett Group, and not as individuals. Neither Mr. Padgett nor Mr. Hickman proposed, alternatively, that the Court consider appointment of either individually, despite the fact that each certified to suffering more losses than Mr. Salem. Neither did Mr.

**MEMORANDUM DECISION AND ORDER - 17**

Padgett nor Mr. Hickman present any evidence in the record which would support individual lead plaintiff appointment for either one of them, other than their certifications which outline their financial losses.

Moreover, the circumstances here are quite different from those cases presented by the Padgett Group in purported support of their reply argument requesting individual consideration of its members.  In those cases, the courts were faced with appointing a lead plaintiff after finding all movants improper.  *See In re Flight Safety Technologies, Inc. Sec. Litig.*, 231 F.R.D. 124, 130 (D. Conn. 2005); *In re Star Gas Sec. Litig.*, Civ. No. 04-1766 (JBA), 2005 WL 818617, at *4-6 (D. Conn. Apr. 8, 2005); *In re Carreker Corp. Sec. Litig.*, Civil Action No. 3:03-CV0250-M, 2003 LEXIS U.S. Dist. LEXIS 25988 (N.D. Tex. Aug. 14, 2003).[9]

Finally, given the Padgett Group waited to raise its alternative request for individual consideration of its two members for lead plaintiff appointment in its reply memorandum, Mr. Salem (and other plaintiffs) did not have the opportunity to rebut whether either individual satisfies Rule 23's typicality and adequacy requirements.  For all of these reasons, the Court in this instance will not disband the Padgett Group to consider each of its individual members separately for appointment as lead plaintiff.

---

[9] Interestingly, the Padgett Group also cites to a case consistent with this Court's decision wherein the court did not disband any group, but rather found a movant group improper, and then appointed a competing movant with the next largest financial loss as lead plaintiff.  *E.Spire Commc'ns, Inc., Sec. Litig.*, Civ. No. H-00-1140, at *19, 2000 U.S. Dist. LEXIS 19517 (D. Md. Aug. 15, 2000).

**MEMORANDUM DECISION AND ORDER - 18**

### C. *Rule 23's Typicality and Adequacy Requirements*

Given the Court has found the Padgett Group to be an improper group for appointment as lead plaintiff and has declined the alternative request to consider Mr. Padgett or Mr. Hickman, the only other movant, Mr. Salem, becomes the presumptively most adequate plaintiff in this case because he has the next largest financial interest between the movants.  *See, e.g.*, *In re Cavanaugh*, 306 F.3d at 730 (courts generally move to consider the plaintiff with the next largest financial interest as the lead plaintiff); *In re Level 3 Commc'ns*, 2009 U.S. Dist. LEXIS 44706, at *17; *Tsirekidze,* 2008 WL 942273, at *4-5.

At this point, the Court next must make an initial determination of whether the presumptively most adequate plaintiff has made a prima facie showing that he has satisfied Rule 23's typicality and adequacy requirements.  *Id*.  Rule 23 requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class, and that the representative parties will fairly and adequately protect the interests of the class.  FED. R. CIV. P. 23(a)(3)-(4).  The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir.1992).

At this stage, the district court makes its initial determination by relying on the presumptive lead plaintiff's complaint and sworn certification.  *Id.  See also*  15 U.S.C. §

78u-4(a)(2)(A).  Mr. Salem's sworn certification provides that he has read the complaint filed in this action, did not purchase PCS securities at the direction of counsel or in order to participate in any private action, and is willing to serve as a representative party. Further, in the certification he has set forth all of the transactions in the subject security during the Class period, has identified any and all other actions within the last three years wherein he sought to serve as lead plaintiff, and indicated that he will not accept payment for serving as lead plaintiff beyond the allowed pro rata share of any recovery.

Because Mr. Salem has shown that he suffers from the same injury as other class members, his claims are not unique to the class, and other class members have been injured by the same course of conduct,  Mr. Salem has made a prima facie showing that he satisfies Rule 23's typicality requirement.

Likewise, Rule 23's adequacy requirement is satisfied "if there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation."  *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, *4 (N.D. Cal. Apr. 16, 2007).  Here, there is no apparent evidence of conflict between the representative and class interests, and Mr. Salem filed a 27-page supplement to his certification presenting evidence that his attorneys have significant experience in securities class action cases.  Therefore, Mr. Salem has satisfied the two-pronged prima facie adequacy test.  *See* Gordon Decl. Ex. C, Gordon Decl. Ex. D (Dkt. 17-3, 17-4.)

Because Mr. Salem has made a prima facie showing that he satisfies Rule 23's typicality and adequacy requirements, he becomes the presumptive lead plaintiff unless another plaintiff successfully rebuts the presumption.

### D. *Rebuttal of Lead Plaintiff Presumption*

The PSLRA allows other plaintiffs to rebut the presumption that the proposed lead plaintiff has satisfied Rule 23's typicality and adequacy requirements.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  At this stage, the process turns adversarial, and other plaintiffs may present proof that disputes the presumptively most adequate plaintiff's prima facie showing of typicality and adequacy.  *In re Cavanaugh*, 306 F.3d 726, at 730.  Here, the typicality prong of Rule 23 is not in dispute.

Although the Padgett Group did not present any rebuttal argument or evidence in its brief filed in opposition to Mr. Salem's motion for appointment as lead plaintiff  to suggest that Mr. Salem is inadequate to serve as lead plaintiff (Dkt. 26), the Padgett Group did raise arguments regarding the adequacy of Mr. Salem, and his proposed lead counsel, in its reply brief filed in further support of its lead plaintiff motion.  (Dkt. 30.) These arguments and Exhibit A to the supplemental Declaration of Philip Gordon (Dkt. 31) are the subject of Mr. Salem's Motion to Strike (Dkt. 33), filed under Rule 12(f). Therefore, the Court first will take up the Motion to Strike before proceeding with deciding Mr. Salem's competing lead plaintiff motion.

## (1) *Motion to Strike Under Rule 12(f)*

In support of his motion to strike, Mr. Salem contends that portions of the reply brief and declaration filed by the Padgett Group introduced for the first time "new arguments and evidence" and also that the reply brief exceeded the 10-page limit for reply briefs in Local Rule 7.1 without permission of the Court.[10]  The new arguments and evidence in the reply brief contest Mr. Salem's adequacy to serve as lead plaintiff based on certain language contained in the certification he signed and based on his selection of Robbins Umeda as lead counsel.

Federal Rule of Civil Procedure 12(f) permits the Court to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Under the express language of the rule, only pleadings are subject to motions to strike." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  Here, although the Court agrees that the arguments and purported evidence challenging Mr. Salem's adequacy were not raised timely, Mr. Salem's memorandum in support of his motion to strike adequately addresses the new arguments and evidence.  Further, the Court is cognizant of its continuing duty to ensure that a class is adequately represented.  *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218-1219 (9th Cir. 2000).

---

[10] The Court will deny the motion to strike on the argument that the Padgett Group exceeded the page limit prescribed by Local Rule 7.1, largely because the offense is not flagrant.  The contents of the reply brief exceeded the page limit by only three lines, if the full-page caption and certification of service are excluded from the page count.

MEMORANDUM DECISION AND ORDER - 22

For these reasons and the fact that Mr. Salem is not seeking to strike a pleading, the Court will consider the entirety of the Padgett's Group's reply brief and the supplemental declaration of Mr. Gordon, as well as the materials filed in support of and in response to the motion to strike.  The motion to strike will be denied.

### 2) *Mr. Salem's Understanding of the Fiduciary Obligations of Lead Plaintiff*

The Padgett Group attempts to call into question Mr. Salem's adequacy because Mr. Salem argued in his response to the Padgett Group's lead plaintiff motion that the Padgett Group is an improper group.  Padgett Reply, at 7 (Dkt. 30.)  The Court rejects this argument out of hand, as Mr. Salem had the same right as all other plaintiffs to challenge the adequacy of the presumptive lead plaintiff, which in this case happened to be the grouping of two investors with the largest financial losses at stake.  Further, Mr. Salem did not contest the adequacy of either of these two investors individually such to suggest a conflict between Mr. Salem's interests as a representative and the interests of the other class members.  Therefore, the Court does not accept the Padgett Group's contention that Mr. Salem failed to understand the fiduciary obligations of the lead plaintiff by virtue of contesting the propriety of the "group."

### (3) *Language in Certification Signed by Mr. Salem*

The Padgett Group's next argument challenging the adequacy of Mr. Salem as lead plaintiff relates to language in the certification signed by Mr. Salem that the Padgett Group claims demonstrates Mr. Salem is "purported[ly] confus[ed]" with respect to his

**MEMORANDUM DECISION AND ORDER - 23**

responsibilities as a lead plaintiff vis-à-vis those of his proposed counsel and that Mr.

Salem may not be able to direct the lawsuit.  Padgett Reply, at 10 (Dkt. 30.) More

specifically, the Padgett Group focuses on language contained in paragraphs 1 and 7 in

the certification:

> 1.    Plaintiff has reviewed the <u>PCS Edventures!.com, Inc.</u>
> <u>Class Action Complaint for Violation of Federal</u>
> <u>Securities Laws</u> **and authorized its filing.**
>
> ....
>
> 7.    Plaintiff represents and warrants that **he/she/it** is fully
> authorized to enter into and execute this certification.

Gordon Decl. Ex. B (Dkt. 17-2) (emphasis added).

The  Court does not find the emphasized language in the certification signed by

Mr. Salem to undermine his ability to fairly and adequately protect the interests of the

class members.  The language indicating that Mr. Salem "authorized" the filing of

Complaint by The Rosen Law Firm is obviously incorrect, as one needs only to look at

the Complaint to determine that Leslie Niederklein was the only plaintiff who authorized

its initial filing.[11]  Additionally, the Court readily concludes that the "he/she/it" is stock

language contained in the certification form.  Furthermore, the emphasized language is

inconsequential to finding that Mr. Salem met the procedural certification requirements in

the PSLRA, which finding the Padgett Group did not contest.

---

[11] The Court concluded that including the "authorized its filing" language was neither essential nor fatal, as noted in footnote 4.

**MEMORANDUM DECISION AND ORDER - 24**

Moreover, minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement.  *See, e.g.*, *Ferrari v. Gisch*, 225 F.R.D. 599, 605 (C.D. Cal.2004) (holding that relatively minor miscalculations of losses suffered by the presumptive most adequate plaintiff were not a legitimate basis for disqualification for lead plaintiff appointment); *Chill v. Green Tree Financial Corp.*, 181 F.R.D. 398, 410-11 (allowing presumptive most adequate plaintiff group to supplement certifications in order to correct technical deficiencies).  The failure to correct obvious or inconsequential clerical errors, like the ones at issue, is not the type of adequacy issue that would "divert the fact finders' attention from the merits and thus infect the claims of the class as a whole."  *Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990).

Because the Padgett Group has failed to show that Mr. Salem will not fairly and adequately represent the class, it has not rebutted the presumption that Mr. Salem should be appointed lead plaintiff.

## 2.  Selection of Counsel

### A. *Attempt to Rebut Adequacy of Presumptive Lead Plaintiff*

The Padgett Group also suggests that Mr. Salem is inadequate to serve as lead plaintiff because he may be "unable to direct and oversee retained counsel."  Padgett Reply at 10 (Dkt. 30.)  Ostensibly in support of this argument, the Padgett Group relies on a 2008 order from a Rule 11 proceeding in the General Court of Justice Superior Court Division of North Carolina, involving Robbins Umeda.  Gordon Decl., Ex. A (Dkt. 31.) The court in that case imposed Rule 11 sanctions upon Robbins Umeda for, generally,

**MEMORANDUM DECISION AND ORDER - 25**

lack of communication with its client and appearing as out-of-state counsel without pro hac vice admittance.  Although the Padgett Group provided the trial court's order to the Court with a supplemental declaration of Philip Gordon (Dkt. 31, Ex. A), the Padgett Group failed to indicate that the order was modified on appeal.  *See Egelhof ex rel. Red Hat, Inc. v. Szulik*, 668 S.E.2d 367, 373 (N.C. Ct. App. 2008).  On appeal, the order was affirmed in part and reversed in part, with Robbins Umeda remaining subject to non-monetary sanctions imposed through the court's inherent power to discipline attorneys. *See Egelhof ex rel. Red Hat, Inc. v. Szulik*, 668 S.E.2d at 378.

Although the Padgett Group, by referencing the sanction order, attempts to rebut Mr. Salem's adequacy based on his choice of counsel, a presumptively most adequate plaintiff's choice of counsel is only relevant in extreme situations where "the choice of counsel is so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff."  *In re Cavanaugh*, 306 F.3d. at 732-733.  The Padgett Group has made no such showing that Mr. Salem's choice of counsel is so extreme as to rebut the presumption that Mr. Salem should be appointed lead plaintiff.

The Padgett Group fails to draw any logical nexus--beyond mere speculation--between Mr. Salem's ability to serve as lead plaintiff and the North Carolina proceeding. The Padgett Group relies merely on an incomplete (and potentially misleading) presentation of facts in an unrelated proceeding to suggest that Mr. Salem will not fairly and adequately protect the interests of the class due to Mr. Salem's choice of Robbins

Umeda as lead counsel.  The Padgett Group has made no showing beyond conjecture that Robbins Umeda is irrational, that Robbins Umeda is tainted by self-dealing or conflict of interest, or that the communication difficulties that arose between Robbins Umeda with its client in 2008 will arise in this action.  The Court therefore concludes that, in this instance, Mr. Salem's choice of lead counsel is insufficient rebuttal evidence.

**B. *Appointment of Lead Counsel***

The Court has reviewed the record and finds, notwithstanding the circumstances in *Egelhof ex rel. Red Hat, Inc*., that Robbins Umeda and Gordon Law Offices are highly qualified litigators with extensive experience in prosecuting complex securities actions. *See* Gordon Decl. Exs. C, D (Dkts. 17-3, 17-4.)  Because of their qualifications and consistent with the intent of the PSLRA to leave the choice of class counsel in the hands of the lead plaintiff, the Court will approve Robbins Umeda as lead counsel.  *See In re Cavanaugh*, 306 F.3d. at 734.

## CONCLUSION

The Court will appoint Mr. Salem as lead plaintiff; and will approve Robbins Umeda as lead counsel and Gordon Law Offices as liaison counsel.  Further, because the Court has considered the materials filed in support of and in response to the motion to strike, the motion will be denied.

**MEMORANDUM DECISION AND ORDER - 27**

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED that:**

1)      The Motion of the Padgett Group to (1) Appoint Lead Plaintiff; and (2) Approve

Lead Plaintiff's Selection of Counsel (Dkt. 13), is **DENIED**;

2)      Moustafa Salem's Motion for Appointment as Lead Plaintiff and Approval of

Selection of Counsel (Dkt. 15), is **GRANTED**;

3)      The Motion to Strike Padgett Group's Reply in Further Support of Lead Plaintiff

Motion (Dkt. 33), is **DENIED**.

DATED: February 24, 2011

_____

Honorable Candy W. Dale
Chief United States Magistrate Judge